Good morning, Your Honors. May it please the Court, my name is Anthony Martin and I am counsel for Mr. Trejo. I was also his trial defense counsel and what I propose to do at this time is give you a brief case history, just quickly go through some of the relevant facts to refresh your recollection. I know you've read the briefs. I think you, Mike, can count that we know them and so to the extent you need them to tie into your legal argument, that's probably the best use of your time, but I'm going to leave it up to you to decide how you want to argue. Very well. I'll be very, very brief. He's a first-time nonviolent offender. He's 35 years old, has five children, all school age. He was initially charged with violations of 841 and 846 under Title 21. There were two subsequent indictments and six weeks before trial, a machine gun charge was added. That's under 24C1B2. The relevant facts are that Mr. Trejo found himself in that circumstance because he was the middleman in the transfer of a rifle from one gentleman named Lamont to another one by the name of Sandoval. And there's no indication on the record, there was no evidence at trial that he ever – Is your argument insufficiency of evidence for the conviction? It is. Insufficiency with respect to mens rea. And what I mean by that, Your Honor – Well, that's not insufficiency, but you just mean you think that mens rea wasn't discussed or proved in the case. That's correct. Absolutely not. Is it insufficiency or legal error in failing to instruct, which you didn't request? I was going to say, I would submit that it's both. With respect to failing to instruct, I didn't ask for – So it would be plain error of review. That's correct, Your Honor. Okay. It would be plain error of review. And I say that in realizing that counsel, looking back on these things, probably should have done that. No, definitely should have done that. I didn't. That's for another forum at another time, perhaps. Nevertheless, I still believe that the government had – Well, you know what? The truth is, sometimes ostensible mistakes by counsel redound to the benefit of their clients. I won't go any further with that. But don't beat yourself up too badly over not asking for it, because frankly, sometimes you take error out of the case by asking for something. Understood. Thank you for those kind words. In any event, Your Honor, it is my position, it is Mr. Trejo's position, that the government had to prove not only that it was a machine gun, which clearly they did in conformance with O'Brien, Castillo, and Harris, that But if you add on to that, they also had to prove as a logical extension that he knew that the rifle did, in fact, have automatic capabilities, that it was a machine gun. And I say that pointing directly to two cases. But didn't he argue at trial that he never had the weapon? Wasn't that his argument? He argued at trial that he simply transferred the weapon. The weapon was – He never argued, though, that I didn't know it was a machine gun, did he? Did he argue that? We argue that at sentencing, and during my cross-examination – I said at trial. Well, if I may, Your Honor. During the cross-examination of the Special Agent Griffith, I specifically asked him questions that related directly to the fact that Mr. Trejo didn't know about the characteristics and capabilities. The way I did that was by showing that he never actually handled the weapon, that there was no indication that he ever test-fired it. There was no indication that he knew what the weapon's capabilities were. I asked him about DNA. I asked him about fingerprints. Was the weapon marked with auto on the top of it? Apparently it was, because that question was asked, I believe, by government trial counsel. It was. But – Are you disputing that the weapon was marked – had auto marked on it? No, we did not dispute that, Your Honor. Okay, okay. We did not dispute that. However, I don't know that that is meaningful. In the case of Nieves, which was a First Circuit case out of Puerto Rico, there was an AR strike that – an AK-47 that was placed in a bag, and she was asked – that is, Mrs. Nieves Castano – by a friend to hold this weapon in her apartment, and she did so. She kept it in her closet until such time as there was a knock on her door. Apparently there was a sweep related to a narcotics investigation, and she tried to lower this weapon over her balcony. It was seen doing so by another law enforcement officer. Obviously, they found the weapon. She was convicted at trial for possessing it. I believe it was under 922-0. And later on, it was reversed by the First Circuit on the machine gun count, because there was no indication that she knew of the capabilities of the weapon. And I believe that that case stands squarely with this one. And so we're relying on that, as well as the Staples case, where Justice Thomas gave an opinion that specifically said that when you're talking about cases like this that have strict liability or cases like this have – Was there testimony – I just – no, I don't remember this. Was there testimony in this case, although your client didn't admit it, was there any testimony that he actually handled the weapon? Absolutely none. In fact, that's an excellent question, Your Honor. And the reason I say that's an excellent question is because neither Larry Lamont, who was the seller of the weapon, nor Sandoval, who was the purchaser of the weapon, was ever called by the government to testify. The people – Did they have cooperation agreements? They had – well, you'd have to ask government trial counsel that, I presume. Well, if it hasn't been disclosed to you, then clearly they didn't, because it would have been disclosed to you if they had cooperation agreements, whether or not they were – whether or not they were called as government witnesses. Well, I don't recall ever seeing cooperation agreements. Okay. I don't want to slow you down. Go ahead. You were responding to Judge Shedd. Right. So how did the government go about proving that it was Mr. Trejo who actually had this weapon? They called in cooperators to testify that Mr. Sandoval told them, when asked, where did you get this rifle, that he got it from Trejo. I'm going to make myself clear on that. They had people come in with hearsay. This was co-conspirators? Co-conspirators come in with hearsay to say that Sandoval told them that he got the rifle from Trejo. But you don't object – I mean, you don't contend that that was not properly admitted as substantive evidence. It was properly admitted. I mean, it's hearsay. They were cooperators. They were co-conspirators. And it was substantive evidence. It was substantive evidence. That's true. But at no time – Okay. It's excluded. The point that I'm getting at, Your Honor, is none of these people ever saw that Mr. Trejo actually transferred this weapon. And I would submit that in the absence of that, there is no evidence that Mr. Trejo knew, again, the characteristics and capabilities. He never testified it. No evidence of that. He never handled it. No evidence of that. So we're back to a sufficiency challenge? I'm sorry. I really am having a little bit of trouble understanding – pigeonholing your argument for purposes of analysis. Are we analyzing it under a sufficiency rubric? I think there is insufficient evidence here, and I would say yes. I would say yes. Insufficient evidence of what? Insufficient evidence as to the characteristics and capabilities of the weapon. Not on possession? Not on possession, correct. We're not disputing that he possessed it, but mere possession alone, we would submit it's not enough. Not enough to prove his knowing possession of a machine gun? Exactly. And you know, Your Honor, one of the cases that the government seems to be relying on is Harris. And I looked over the Harris case, and that was interesting because later on in the Harris case, you'll recall that too was a case where there was a purchase of a weapon, and Mr. Smith was a joint defendant, a co-defendant in that case. And later on the government dismissed that as to Mr. Smith. And why did they do that? Because there was no knowledge, and I read this, the government concedes that there is insufficient evidence to support a conclusion that Mr. Smith knew the gun was a machine gun, and that a judgment of acquittal on Section 5861 count should therefore be entered as to him. In other words, he didn't know. He knew that there were weapons in the bag, but he didn't know it was a machine gun. And I think that's important because if the government's going to be relying on Harris, they've got to rely on the whole case. Could I, I'm very sorry, if I could just go back to my question. You're conceding in response to Judge Davis' question that defendant possessed. He possessed. You're challenging the fact that he transferred. I'm not quite sure I understand why that matters for purposes of what I understand to be our job here, which is to construe 924C1. He possessed it, Your Honor, but that doesn't mean he knew about the characteristics and capabilities. It's the men's race. It's the scientia. I was just not understanding why. It's the 30-year sentence, isn't it? It's a 30-year sentence. That's what you're here about. Yeah, but I didn't understand the transfer. Doesn't it matter, perhaps, in plain error analysis? Isn't that where it matters? If he possessed the weapon and the jury could reasonably find that he saw automatic on the top, it may be that then the evidence is beyond a reasonable doubt that he possessed a weapon that he saw was automatic. And from that, it might be, depending on how the law was isn't why that matters? Well, before I answer that, I don't know that the jury could make such an assumption. When I asked you that, I asked you, I said, if that's the case, might it not then matter in plain error analysis? Yes, Your Honor. Not error analysis, but plain error analysis. Yes, Your Honor. Yeah. By the way, you don't have to concede any of that question I laid out. I was just asking you, that's why it might be relevant. That's all. Getting to the language of the statute, any person who uses or carries or who in furtherance of such crime possesses, etc., etc., a machine gun or destructive device or is equipped with a firearm silencer, etc., etc., the person shall be sentenced to a term of imprisonment of not less than 30 years. And our question has to be, is there a requirement the defendant knowingly use or carry? And I think the answer to that is yes. And why is that? Because other provisions of 924 list a specific mens rea element, either knowingly or willfully. Or maliciously. And this does not. That's right, Your Honor. So why should we supply limiting a modifier that Congress knew how to include and for whatever reason chose not to do so here? Well, it's a common law principle that when you're talking about crimes that have lengthy sentences or harsh penalties, that strict liability is something that the courts should avoid. And I would submit to this court that when somebody is facing as much as 40 years, that falls right into that rubric or that category. But I'm not sure that strict liability, I mean, the underlying offense is committing a crime of violence or drug trafficking. So that 924C1A. I'm not sure I follow you with that. Well, it has, there are mens rea elements in here. There just isn't, there isn't anything that I read that requires a person to knowingly possess a machine gun. That's, I'm asking you to help me supply it here. Well, if it's in some sections and not in other sections, my answer would be that there is some kind of conflict or ambiguity. And given that, then the rule of lenity should apply. If the whole statute can't be read consistently, if there is some... No, wouldn't it be if Congress knows how to use it and they didn't use it here, it means it's not required. Yeah, but you can't presume that Congress' intent then would be strict liability. Isn't, isn't, but isn't, isn't it a rule of statutory construction that when Congress uses a term in some sections of the statute and doesn't use it at another that the omission is intentional? I'm not going to concede that point, Your Honor. With respect, I would turn the Court's attention to Staples, where I believe... Staples is a slightly different... It's a different statute, admittedly. It is a different statute. It's a different statute. I'll concede that point. However, despite the fact that it's a different statute, it still goes to the question of mens rea and whether or not somebody should be held strictly liable for the characteristics and capabilities of a weapon. And I think that Staples is a touchstone to your analysis in this particular case. And again, I would say that the waypoint, the next waypoint, is Nieves-Castano. And Nieves-Castano relied on Staples, notwithstanding the fact that that too was a different statute. So I don't think that we would be too far off in looking at those two cases. The government also cites Burwell, which is a D.C. case, which I know something about because I was a trial defense counsel in that case as well, and that involved long guns. And I would call the Court's attention to the dissent of both Judge Rogers and Judge Kavanaugh, because I think that they have answered this question better than the majority has in that particular case. And Judge Rogers, I think, makes the argument that I'm trying to make here today about the mens rea and answers the question that I think you put to me just now about the absence of specific language. You mentioned 40 years, Mr. Martin. Where did you get – is that the maximum under this statute? No, it's not. I don't think it's the maximum. It's life. We're talking minimum mandatories here. Ten years was, of course, for the 841A. No, I'm talking about the machine gun count. I believe that that was up to life, Your Honor. No, the mandatory minimum amount. The mandatory minimum was 30 years. It was 30. And it was consecutive to the 10, which was also a mandatory minimum because of the drug counts. So that's why he was facing a mandatory minimum of 40. Okay. We're alluding to 40 as the aggregate sentence in this case. No. Other counts were run concurrent. Right. Right. When you said to Judge Shedd, or to all of us, actually, that you were conceding, you weren't challenging possession. I thought you were saying you weren't challenging the sufficiency of the evidence of possession. Well. Not that you were conceding that there was sufficient evidence to prove a knowing possession of a machine gun. I'm conceding possession of the rifle. I am not conceding his mens rea regarding the capabilities and characteristics. He negotiated as a middleman. Again, you can say it any way you want, but I think what you mean is you're not challenging the sufficiency of the evidence of his possession. I'm not. Okay. Those are very different things. When you stand in front of a court and say, I'm conceding a factual matter, that could really come back to bite you. Understood, Your Honor. Moving on to the argument of proportionality, Your Honor. Again, very quickly here because I see the yellow light is on. I call the Court's attention to three cases, Weems, Robinson, and Solon v. Helms. The Weems case, I think, was the one that laid down the proportionality argument. It goes all the way back to 1910. It's never been overturned. And I would ask the Court to look at those. I see the lights on. I've reserved some time. I'm going to come back to that because I think it's a very important part of Mr. Trenthope's argument. You reserved three minutes. Do you want to take a minute of those three? I would. Go ahead and make that, and then we'll just give you two at the end. How about that? Yes, sir. Okay. You'll recall that in the Weems case, that gentleman, he was a public official. He got 15 years for falsifying a document. In Robinson, that gentleman was given 90 days for being addicted to narcotics. And in Solon v. Helms, a gentleman got life without parole for uttering a check of $100. And in all three of those cases, starting in 1910 and ending in 1983, the Supreme Court recognized the idea that the Eighth Amendment actually has within its scope proportionality. And you can't have disproportionate punishments for offenses where we have a situation like this one with Mr. Trejo, who's a first-time nonviolent offender who hasn't acted in a violent fashion like was the case in Robinson, which was before this Court. It just shocks the conscience, and it's not within the realm of reason. Having said that, I know that I still have two minutes. I want to be able to have some rebuttal time. Okay. Thank you very much. Because I know my colleague is going to make some strong arguments. We'll call you back up with two minutes. Thank you very much, Mr. Rahman. Thank you very much, Judge Shedd. May it please the Court, my name is Sujit Rahman. I'm the Appellate Chief for the District of Maryland, appearing on behalf of the United States. Your Honors, this is, at its core, a pure case about statutory construction. The question is, how does this Court interpret Section 924C1B2? And if I could, I would like to talk, first, about the text of the statute, second, about the structure of the statute, third, about the basic legislative purpose, and fourth, about the cases that have interpreted this language, all of which leads to the idea that the government need not prove a specific intent for the defendant to possess a machine gun in charging this particular offense. Judge Duncan, I appreciate the questions that you asked my opponent regarding the actual text of the statute, and I think it's very important for this Court to recognize that there is no knowingly possessing a machine gun. That language is language Congress could have inserted, and indeed, in other statutes, talking about Flores-Figueroa, the aggravated identity theft statute, Congress has explicitly done that. And indeed, the question in Flores-Figueroa was, how far down the line does knowingly modify? Congress knows how to write those statutes. It made the decision. If I can distract you for just a second from the statutory interpretation. If the mandatory minimum here were 100 years, would there be a mens rea requirement? Either, well, would a court be compelled to imply a mens rea requirement? Court is compelled to apply the statute that Congress has written. So your answer is no? It is no. If it were 200 years, would the court be impelled, required as a matter of constitutional due process to imply a mens rea requirement? Your Honor, there is no due process issue here. Okay. If it was 300 years, would a court be required to interpret this statute as having a mens rea requirement? The court is obliged to apply the statute that Congress has written. So your answer is no? The answer is no. I would be very surprised. It's amazing how far the Department of Justice will go sometimes, even in the face of absurd hypotheticals. I understand you've got to stick to your position. But that's an absurd answer, isn't it? Let me respond, Your Honor. First of all, it's not just the Department of Justice. It's exactly. You're here for the Department of Justice. It is this court. You're here for the Department of Justice. You're not here for this court. You're here for the Department of Justice. Your Honor, under Ming Hong, this court has ruled that term of life, that term of years sentences are not subject to proportionality review. And so it's this court's precedent. Wait a minute. Do you realize we've revisited that in the last week in a concurring opinion by Judge King? I know. You didn't know that? I know that Judge Gregory wrote it. You didn't know that Judge King wrote a very compelling, concurring opinion in Hashimi? Yeah, in your honor. In which he clarified the law of the circuit? If I may respond, Your Honor. Yes. Judge King wrote a concurring opinion in Hashimi. Yes. Making very clear that proportionality could not be addressed by the panel in Hashimi. Judge Wilkinson wrote the majority opinion in that case and very clearly said, we're not reaching proportionality. It's not true. With respect, Your Honor. You have absolutely misrepresented Judge King's concurring opinion. With respect, Your Honor, I do. He said, what he said was it's not necessary in Hashimi to consider proportionality because Judge Wilkinson's majority opinion granted the relief that rendered moot any sentencing question in that case. But he went on to say that, in fact, under existing circuit precedent, contrary to the conventional wisdom, proportionality review is not a dead letter in the Fourth Circuit. That's what he said in his concurring opinion. If I may respond again, Your Honor. I've read Hashimi. I've cited it in my Rule 28J letter. I've seen the opinion that Your Honor has concurred with Judge Gregory. My understanding of the law in this circuit, as of today, that is binding upon this panel under McMillan, is that proportionality- It is not binding. That's the entire point of Judge King's concurrence, is that under McMillan, we're not bound by those subsequent cases. We're bound by Judge Russell's original opinion. My sense, Your Honor, and I understand where Your Honor is going with this. We should move on because, really, we don't need to spend time talking. Your Honor, you have suggested that I've misrepresented the law of the circuit, and I do respectfully want to respond to that. I do represent the Department of Justice, and I simply do wish an opportunity to respond to the idea that I've misrepresented the law of the circuit. Just let me say this. You're just mistaken. That's all. I'm going to say, I listened to the exchange. As to what the law is, people can read it and look at it. Judges may disagree as to what that stands for, but the point is, I think it's fair to say you were just responding. You might be wrong, but as your best effort at reading that law is, to your limit, you're representing to the court. That's the way you read it. That's correct, Your Honor. And if I could respond to you, Judge Shedd, the key issue in this case, Judge Davis and Judge Duncan as well, is how do we interpret Section 924C1B2? So the proportionality issue is an issue in this case. It's something that defense counsel raised below. My sense is that this is an issue that perhaps the entire court might have to revisit at some point. But in my view, in the government's view, this panel is bound. And I recognize that different judges might have different views on that. But focusing on the key issue in this case, which is, does a defendant need to be – does the jury need to be instructed on a specific mens rea regarding the possession of a machine gun, which is, after all, the key issue in this case, which he didn't raise below. It's up here on plain error review. In our view, the answer is clearly no. The jury need not be instructed. For the textual reasons that we've talked about, the idea that there is no knowingly component – But for our review under plain error, that's addressing the no error part. Yes. Correct. Correct. Does your analysis under plain error go beyond that? It does, Your Honor. It goes to the structure of the statute as well. And so – But that would be error, wouldn't it? I'm talking about – I'm not trying to play a game with you. Under plain error review, it goes like this, as I understand it. Is there error? Is it plain? Is it plain? And basically, are we going to acknowledge that because it affects substantial rights? Is there a miscarriage of justice? Right. And let me persuade the court – And that's why I had a question, just for what it's worth, about the question of the facts as to the plain error and effect of substantial rights. If, in fact, he, the defendant, was in a position the jury found or could have found that he could be charged in just a normal sense, he could be implicitly or implied to know the burst on the weapon. Do you get my point there? I do, Your Honor. Okay. And so I guess you're really getting to the fourth prong of plain error review, which is, is there a miscarriage of justice? One of those prongs. Yeah, one of – under the Alano test. And in our view, it's harmless error. And here's why. Because as the expert testified at trial, if you look at the gun, it says auto on it. And there's a little switch that you have to push. Right. Is there evidence, is there evidence, testimony that the defendant saw the weapon? There is, Your Honor. See, I asked that question of Mr. Martin, and I thought he sort of indicated that there was no such evidence. I spoke to the – I did not try this case, Your Honor. Okay. But I spoke to the prosecutor, and it's not in the joint appendix, and perhaps we should supplement the joint appendix on this point. But the prosecutor who made the closing argument touched upon three ways in which the evidence was sufficient to support the conviction. First, Ms. Romero was a cooperating witness in this case, testified that Poeta, Mr. Sandoval, offered to sell him a rifle. She watched as the defendant – she, that is, Ms. Romero – watched as Mr. Trejo Ruiz drove up to the house that she shared, Ms. Romero shared with Sandoval, saw him open the trunk, pull out a golf bag. Then she kept watching as Mr. Trejo brought that golf bag into the house, pulled this machine gun, two magazines, and ammunition out of the bag. So in other words, this testimony – that was introduced as testimony. Did she testify? Ms. Romero testified at trial. Oh, yeah. So there's testimony that he actually physically had the weapon in his hand. In a golf bag, took it out. Yeah, but I said had it in his hand.  And at that point, traded the gun for about $1,000 worth of cocaine. So yes, he absolutely had it in his hand. Which is why I say, under the fourth prong of Olano, there's no miscarriage of justice here because the evidence suggested that this man actually possessed the gun and reasonably would have seen the auto switch on it. Which is why, again, getting under that analysis, that's why there isn't any error here because if the government's submission is, had the jury been instructed that Mr. Trejo had to know that it was a machine gun, it nonetheless would have convicted in light of the evidence. Could I ask you about that? Yes, Your Honor. If knowing that it's a machine gun is an element, is a mens rea that the judge is required to instruct the jury on, are you saying that it's not error for a judge to fail to instruct the jury on an element of a federal criminal offense as opposed to whether it's harmless error or plain error? Are you saying it's not error? I'm not saying that. It is certainly error. If, as a matter of law, that is something. If the appellant is correct that knowledge as to the character of the weapon is an element, there clearly was error here. Correct. Correct. I understand the but, and I'll let you get to it in a minute, but there clearly is error. Absolutely. And so then we move on to whether it was plain error and then the following components of And it's not plain error because there's no binding law in this circuit suggesting that that's something the district judge should have known. Of course, we have circuit precedent. Judge Keenan disagreed with me in Carthorn, but it doesn't have to be law in this circuit for it to be plain error, right? And I've seen the dialogue. In fact, there can be contrary law in another circuit. Right. But it could still be plain. Which we don't have here, of course, because Burwell is settled law the other way in the D.C. Circuit. But let me get to the third point, Judge Davis, which is constitutional errors are routinely subject to harmless error analysis. That's Chapman, right? The Supreme Court case from the late 90s. Nobody doubts that there can be harmless error. Which is why my response to you, Judge Shedd, is even if there was error here, and for all the reasons that I've said, there was no error. Let's say there was error. It's still subject to harmless error review under Chapman, and again, our view is to the extent that the evidence in this case showed that Mr. Trejo, Mr. Trejo Ruiz, physically possessed this machine gun that says auto on it, that you have to actually push the You say it's harmless error as to a constitutional violation? Instructional error. That's your point, as opposed to the plain error review that we do over the charge. Although, again, we're here on plain error review, so. Explain that to me again. Why do you say harmless, but we're still here on plain error? What's the interplay between those two concepts? Well, there is, Your Honor, and I'm actually perhaps arguing against myself here. I mean, plain error review is what we're talking about. Right. So that is a far more deferential standard for the government than harmless error. You argue that in a case where there was error, you could always argue even a constitutional violation could be harmless error. But this is a plain error. But you don't need that here. Right. Because if there was an error, Judge Davis, again, we submit there wasn't. I know. I threw you off because. That's right. You're clear. Your frontline argument is there's no error under the statute, structure, language, all of that. Right. But I said, okay, I hear what you're saying. But if there is error, make your plain error argument. Right. Because I wanted to get to the specific facts that would support a plain error argument if you get there. I'll let you go back to whatever you wanted to argue. And just to quickly supplement that, Judge Shedd, Ms. Romero testified at trial. There was also testimony from one Mr. Oliveira who was at Sandoval's house when Sandoval pulls out the machine gun and tells Mr. Oliveira that Mr. Trejo sold him that gun, which is another way that the gun was put in Mr. Trejo's hands. And third, there's another individual, Mr. Rosales Campos, also a cooperating witness. He said that. But just let me say something. I don't want to belabor this point too much. But on that second point, the fact that somebody sold him doesn't necessarily mean he saw it. It could have been in a golf bag. That's true. Do you take my point? I do, Your Honor. That's true. But I think when you combine it with Ms. Romero's testimony, it's of course very similar. I think that may do it. I think that may do it. Judge Duncan, getting back to your questions earlier, talking about not only the text of the statute, but the structure of the statute, I would draw the Court's attention to Dean v. United States, a Supreme Court case, 2009, where the Supreme Court held that a defendant need not knowingly discharge a firearm, which is a sister provision, Section 924C1A3. There is no mens rea requirement under that provision. So, yes, Your Honor. Could I ask you to address the Staple, Mr. Martin's argument under Staples and his strict liability analysis? Yes. So Staples and Nieves, which is the other case that he cited, which is a 922O case, are fundamentally distinguishable from this line of cases, the 924C cases. And here's why. The Supreme Court in Staples made it very clear that the reason why a mens rea requirement had to be imported was because otherwise perfectly innocent conduct could be criminalized. And you don't have that here because there's a predicate offense. There's a double predicate. Double predicate. There's the drug trafficking offense plus the possession of the firearm in furtherance of. Now, here's my problem with that. Yes, Your Honor. And this is not addressed at all in the briefs. We have a case, I believe it's United States v. Kimberlin, 1994, in which this circuit affirmed a use and in furtherance of conviction even though the jury acquitted on the underlying drug transaction. So this circuit permits inconsistent verdicts even where the weapons offense is derivative of the underlying drug offense. And so my question is, apropos your colloquy with Judge Duncan, is does that reasoning stand up in a circuit where, in fact, you can be convicted alone of the underlying weapons offense even as the jury acquits you of the predecessor drug offense? It does, Your Honor. Explain that to us. Yeah, we're outside of the briefs here. But my recollection is. But not outside of the law. Oh, of course not. The Supreme Court has affirmed that idea, that you can be acquitted of an underlying offense yet convicted of an enhancing because of the idea of inconsistent verdicts. We don't know what's going on in the jury of the black box. That's their compromise verdict, right? That's not necessarily a compromise. Maybe the jury actually doesn't believe beyond a reasonable doubt that the drug offense has been committed. Well, I'm trying to answer the doctrinal question, Your Honor. The legal point is there is no due process issue or there's no constitutional issue with an inconsistent verdict acquitting on the one hand of the underlying predicate offense yet convicting on the enhancement built upon that. The potential due process issue arises when you have a strict liability crime with a mandatory minimum sentence. Now, this one is 30 years. And you and I had that somewhat heated exchange a few minutes ago. Respectfully. Which is always, I enjoyed it. I hope you did. Of course. But so I tried to take you to see how far you would go. And you said no to all of my hypotheticals. But surely you don't, well, let me give you the rest of your time. I don't want to tie up your question. Well, I do want to address the point, Your Honor. I don't, I mean, Your Honor used the phrase strict liability. This is not a strict liability offense. It is strict liability if you don't have to know it's a machine gun. But you do have to know because the jury is instructed. But the jury wasn't instructed here. No, no, no. To know it was a machine gun. To convict under 924C, the jury has to be instructed that, number one, a drug trafficking offense took place here and, number two, that he possessed the gun in furtherance of. Right. So that's double. And he has to know it's a gun. Yes. Yes. He has to know it's a gun. Absolutely. And the question that we're confronting here is, in order to earn this 30-year mandatory minimum, do you have to know it's a machine gun? You do not. And that's your position, and I respect that. Well, it's my position. I really do. It's the D.C. Circuit's position. It's, by the way, and I think this is very important to know. What happened, I want you, maybe you did, but I want you to string out your analysis, but on the first count falling but the second standing independently, does that change the analysis? Well, I don't think it does. You know what I'm talking about? Because we all separate it out from knowing, you don't have to have knowing because it's not in this part. You see what I mean? What if the verdict, jury said, you think that's all, you can't get to the second unless you have the 924 predicate act? Well, but again, citing Kimberlin. No, but I'm asking you that. Well, no, I think inconsistent verdicts are perfectly legitimate. It happens all the time where a jury can, it happens in the identity theft context. I know that, but how would it be an inconsistent verdict in this kind of case? Aren't you charged with 924C or whatever it is, 924 with this? The underlying. How would you get to just this in a verdict? Do you understand my question? Maybe I don't, Your Honor. I'm saying, don't you, it's not, are you charged? I don't know what the verdict form was in this case, but are you charged with the violation of a drug offense with the gun? Right. It's linked under the statute, I think is the point. Right. Correct. So 841 is one charge. 924C is count three. There was a couple of travel acts in there. Right. And so those are different charges in the indictment. I guess, and maybe I'm getting hung up on this. You can certainly be acquitted of count one, yet convicted of count three. And count three is what? The 924C. Which is the drug offense with. No, it's a possession of the firearm. In furtherance of. Right. The drug trafficking offense. Right. And what I'm trying to suggest, and the Supreme Court has upheld that notion that you can be acquitted of the predicate offense, yet convicted of the enhancement because. Does that change the analysis at all on the knowing requirement? Well, I don't think it does because to convict of count three, the jury has to find beyond a reasonable doubt that the person possessed the firearm in furtherance of a drug trafficking crime. And the point I think that Judge Shedd may be making is that's the response to the strict liability argument in terms of separating out the innocent from the guilty. Because even within. Right. I think that's what Judge Shedd is. That is. That's what I'm trying to say. I was trying to see if there was some argument I was missing. No. That somehow. No. That you could sort of slice the statute up in a way. To the point where you get the strict liability. That just the gun alone was the. Okay. You know what I mean? That's what I was trying to find. And my answer to that is no. Okay. The only way you can be convicted is if some jury find if some. But I'm saying about 924 to be convicted of an offense that involves a gun. Right. You have to have other parts that you are knowingly or that you are intentionally beyond reasonable doubt guilty of. That's right. First. That's right. And that's how this case is different than the Staples example, the title 26 offense, the 922 0 offense, which is the Nieves case. Those are doctrinally fundamentally different than what we're talking about here. Do you have anything more? Yeah. I just. One quick question. Yeah. Of course. I assume that this was one of those sad instances in which this guy with a criminal history category one was given the ultimatum. You either cooperate or you're going away for 40 years. Is that a fair characterization? I have never seen a person with a criminal history category one get a 30 year mandatory sentence. Yes, your honor. I direct you just to join Appendix 81 82, where there's a lengthy discussion there of the plea offers about the plea. I mean, extensive. They were open for months upon months and when the government does that government can't back away. Well, it's got it. It's got to maintain that. Well, it's not a question of beating our chest, your honor. It's really about beating your chest. But it's you know, you don't care who it is. It could be an 18 year old high school student. Right. But when you bring when you bring the heat, when you put a 30 year mandatory minimum on the table, it doesn't come off. I'm not going to take that position, your honor. I'm just saying that on the facts of this case, it's very clear the prosecutor and again, this is a joint Appendix 83 USA stands up in front of the district court and says, look, we have made this offer of something like, you know, 46 to 57 months. So he made his decision. It's been open for months. He made his decision. And she thought he was dangerous enough to serve less than five years. Well, but because he went to trial and because the Supreme Court has said, oh, plea bargaining is different. Although you can't increase the sentence on somebody just for going to trial. You can increase the sentence on somebody who won't cooperate. Let me address the trial, because otherwise they're going to have to cooperate. Let me address that directly, your honor. As the court is very well aware, you know, we have guidelines issued by the attorney general that mandate or that has been talking lately about these mandatory minimum sentences. And I can tell you that the decision in this case was certainly, of course, I mean, at the end of the day, charging decisions are core article two functions, right? And we take them seriously. I mean, I can't have an opinion, of course, your honor. But what my point, though, is that we certainly don't make these charging decisions willy nilly. There is a very robust supervisory structure where we talk about, is it appropriate to bring a 30-year consecutive mandatory charge in this case? Does the evidence support it? And again, I'm not going to belabor this point, but the U.S. Attorney's Manual talks very consistently about the need for a federal prosecutor. This is section 927-300. Federal prosecutors should ordinarily charge the most serious offense that is consistent with the nature of the defendant's conduct that is likely to result in a sustainable conviction. Let me say this. As a district court judge, just from personal experience, I had people, because of the conspiracy counts, and they just, and it was somebody lower in the operation, but they would not, they would not take a plea. Not my job to convince them to, although I tried to as much as I could in open court. No criminal history, first arrest, get mandatory life. And it is such, you get caught in this system with requirements under certain drug amounts and stuff, and people, people do. And there certainly are some, now let me just say as a footnote, I offered him a chance to, if he would think about substantial assistance, he came for it in another case, and I was able to reduce his sentence to 14 years, because I could tell he wanted to plead guilty, he wanted to do it, but quite frankly, he was scared of his compatriots. He was scared to do it. Sometimes it works. It works best. My time is up, Your Honor. If I could just make one last, very last point, Your Honor. Nobody takes pleasure. Nobody is excited about the fact that this man is spending 480 months in prison. You know, if we could all do it over again, I think Mr. Martin would say the same thing. We would love for him not to be in that position. But he is. Nobody suggests you take pleasure. Thank you, Your Honor. Nobody does. Thank you very much. And Mr. Martin, you have two minutes. I have two minutes, Your Honor. I don't know that I have much to add. Okay. You certainly don't have to take it. But there was some discussion about the gun and him having taken the rifle out of the golf bag. And even if we concede that that happened, and I'm not conceding that it did, there's still no indication that he examined the weapon to know its characteristics and capabilities. And finally, I glossed over this, but I would really like you to go and look at the Harris case, look at the Staples case, and look at Nieves Castaño. In Harris, as I mentioned to you before, Smith was part of a purchase for a machine gun. The gun was put in the bag. And while the others knew that it was a machine gun, the evidence showed later that Smith did not. And his sentence was vacated. And I mention that case because it, too, is a D.C. case, and I believe that the government cited it. And since they cited it and I've cited it, I thought that that dicta was very important because I think that it points to the situation that Mr. Trejo was in. Beyond that, I have nothing to add. Thank you. Thank you. Thank you very much, Mr. Martin, too. We know that you're court-appointed. We appreciate you taking the appointment because we need lawyers who are willing to do it and come and make an argument for their client like you did. So we acknowledge that on the record. Thank you very much. We will adjourn court and then step down and greet counsel.
judges: Dennis W. Shedd, Allyson K. Duncan, Andre M. Davis